USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 1/8/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARIA HIDALGO AND ABUNDIO SANCHEZ, *individually and as parents and natural guardians of L.S.*,

                Plaintiffs,

v.

NEW YORK CITY DEPARTMENT OF EDUCATION,

                Defendant.

No. 19-CV-2590 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

    Plaintiffs Maria Hidalgo and Abundio Sanchez—the parents of L.S., a 10-year old child who has developmental impairments stemming from a traumatic brain injury—commenced this action pursuant to the Individuals with Disabilities Education Act ("IDEA") seeking funding from the New York City Department of Education (the "DOE") for L.S.'s enrollment at the International Institute for the Brain ("iBrain"), a private school for students with special needs. On October 29, 2019, the Court denied Plaintiffs' motion for a preliminary injunction that would have required the DOE, pursuant to the "stay-put" or "pendency" provision of the IDEA, to pay for L.S.'s tuition at iBrain for the 2018–2019 school year pending final adjudication of their underlying administrative action against the DOE. *See* 20 U.S.C. § 1415(j). Now before the Court is Plaintiffs' motion for reconsideration of the Court's October 29, 2019 Opinion and Order ("October 2019 Opinion"). For the reasons that follow, the motion is DENIED.

**BACKGROUND**

Assuming familiarity with the facts of this case, which were set forth in detail in the October 2019 Opinion, Dkt. 38, the Court provides here a brief background of the issues relevant to the instant motion.

## I.    Statutory Background

Pursuant to the IDEA, federal funds are "available to assist state and local agencies" in educating children with disabilities, "provided that the recipients of those funds comply with various provisions of the Act." *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 448 (2d Cir. 2015) (internal quotation marks omitted).  One of the principal purposes of the IDEA is to ensure that all children with disabilities have available to them a "free appropriate public education" ("FAPE"). 20 U.S.C. § 1400(d)(1)(A).  To achieve that end, "school districts must create individualized education programs ('IEPs')" for such children.  *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 72 (2d Cir. 2014).  An IEP "is a written statement that sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012) (internal quotation marks omitted).  In New York State, Committees on Special Education ("CSEs") convened by the local school district are responsible for developing IEPs.  *See* N.Y. Educ. Law § 4402(1)(b)(1).

Parents who believe that their child's IEP is inadequate may file a due process complaint with the appropriate state agency and challenge the IEP in an "impartial due process hearing." *See* 20 U.S.C. §§ 1415(b)(6), (f)(1)(A).  In New York State, the hearing first occurs before an independent hearing officer ("IHO") appointed by the local board of education.  *See* N.Y. Educ.

Law § 4404(1). Either the DOE or the parents may subsequently challenge the IHO's decision to the Office of State Review, where it will be reviewed by a state review officer ("SRO"). *See id.* § 4404(2); *see also* 20 U.S.C. § 1415(g). The SRO's decision may then be challenged in state or federal court. *See id.* § 1415(i)(2)(A).

Pertinent to this case, the "stay-put" or "pendency" provision of the IDEA further provides that, "unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child" during the pendency of the administrative process described above. 20 U.S.C. § 1415(j). "A claim for tuition reimbursement pursuant to the stay-put provision is evaluated independently from the evaluation of a claim for tuition reimbursement pursuant to the inadequacy of an IEP." *Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d 158, 160 (2d Cir. 2004). "Section 1415(j) represents Congress' policy choice that all [children with disabilities], *regardless of whether their case is meritorious or not,* are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved." *Id.* at 160-61 (internal quotation marks and alterations omitted). Put simply, § 1415(j) obligates an educational agency to maintain the "status quo placement even if the child would otherwise have no substantive right to it." *E. Lyme Bd. Of Educ.*, 790 F.3d at 453. The purpose of the pendency provision is to provide stability in the education of the student while the parties' dispute is being resolved. *See id.* at 452.

## II. Factual Background[1]

Plaintiffs are the parents of L.S., a 10-year-old child. Due to a traumatic brain injury, L.S. has global developmental impairments that render her non-verbal and non-ambulatory. As a

---

[1] Unless otherwise noted, the facts in this section are drawn from Plaintiffs' Complaint and are undisputed.

student classified as having a disability, the New York City Department of Education ("DOE") must provide her with a FAPE for every school year.

On March 24, 2016, the CSE convened an IEP meeting for L.S. According to Plaintiffs, both parties agreed at that meeting that the IEP for the 2016–2017 school year should include an educational program consisting of, among other things, a 6:1:1 class size (*i.e.*, 6 students, 1 teacher, and 1 aide). The IEP was not reduced to writing at that time, but the meeting was audio recorded. Plaintiffs submitted a copy of the recording in support of their motion for a preliminary injunction.

On June 23, 2016, Plaintiffs sent the DOE a so-called "10-Day Notice" indicating their intent to "unilaterally place their daughter at The International Academy of Hope ('iHope') for the 2016–2017 school year." Declaration of Karl J. Ashanti ("Ashanti Decl."), Ex. C, Dkt. 21-3.[2] Their reason for doing so was their purported "understanding that there is no private school placement the DOE can recommend which would be appropriate for L.S." *Id.* The following day, the DOE issued a written version of what it claimed was the IEP agreed upon by the parties at the March 24, 2016 meeting. *See* Ashanti Decl., Ex. B, Dkt. 21-2.

According to Plaintiffs, although the June 24, 2016 document "matches up very consistently" with the terms of the IEP discussed at that meeting, it provides for a class ratio of 12:1:4, not 6:1:1. Pls' Mem. Prelim. Inj., Dkt. 22, at 5. They therefore maintain that the document reflects an inaccurate memorialization of the IEP to which they agreed at the March 24, 2016 meeting. In spite of this alleged discrepancy, in 2017 the parties entered into a stipulation of settlement in which the DOE agreed to fund L.S.'s placement at iHope for the 2016–2017 school year. The stipulation provided that it could be renewed "for up to two school years," (*i.e.*, the

---

[2] The record reflects that L.S. also attended iHope during the 2015–2016 school year, which the DOE funded as parted of a stipulation of settlement. *See* Ashanti Decl., Ex. C ("Since the DOE settled this case last year [the 2015–2016 academic year] by providing prospective payment of tuition at iHope, [Plaintiffs] are respectfully requesting a similar settlement for the upcoming school year").

4

2017–2018 and 2018–2019 school years) under certain conditions not relevant here. Ashanti Decl., Ex. D, Dkt. 21-4 (the "Settlement Agreement"). The settlement agreement also provided that it could not be relied upon by any party "to indicate, establish, or support the position that the School and/or Services provided and/or funded . . . comprises in whole or in part, the Student's educational program for purposes of the 'pendency' or 'stay put' provisions of the [IDEA]." *Id.* at 6.

L.S. attended iHope during the 2016–2017 and 2017–2018 school years pursuant to the Settlement Agreement. On June 21, 2018, Plaintiffs provided the DOE with a 10-Day Notice indicating their "intent to unilaterally place" L.S. at iBrain for the 2018–2019 school year. Ashanti Decl., Ex. E, Dkt. 21-5. On July 9, 2018, L.S. started attending iBrain, where she remains a student. On that same day, Plaintiffs filed a due process complaint against the DOE, alleging that it did not provide L.S. with a FAPE for the 2018–2019 school year, and requesting, among other things, an order requiring the DOE to fund L.S.'s placement at iBrain during the pendency of the due process proceedings.

IHO Ajello heard evidence regarding L.S.'s pendency placement on August 30, 2018. Ten days later, the IHO issued an order ruling that L.S.'s pendency should be based on an April 29, 2015 IEP—the IEP for the 2015–2016 school year—which recommended a 12:1:4, not a 6:1:1, class size for L.S. Plaintiffs appealed that order to the SRO. On November 23, 2018, the SRO largely affirmed the IHO's order, except that she found that L.S.'s pendency placement should be based on an even earlier IEP—one established for the 2014–2015 school year.

5

## PROCEDURAL HISTORY

Plaintiffs filed suit in this Court on March 22, 2019. Just over three months later, they moved for a preliminary injunction seeking the same relief as that sought in the Complaint—an order vacating the SRO's decision and directing the DOE to fund L.S.'s placement at iBrain for the 2018-2019 school year until the final adjudication of Plaintiffs' due process proceeding. After oral argument on the motion was held on August 8, 2019, the parties were granted permission to submit supplemental letters addressing the impact of recent cases from this District which similarly addressed whether parents are permitted to move their child from one private school to another and receive "stay-put" funding for the new placement so long as the new school offers a program that is "substantially similar" to the prior one.

On October 29, 2019, the Court denied Plaintiffs' motion for a preliminary injunction. The Court held that the IDEA does not grant parents the authority to unilaterally move their child to a substantially similar school and compel the DOE to fund that school—provided that the agreed-upon placement remains available to service the child's IEP. The Court further held that iHope constituted L.S.'s pendency placement.

On November 12, 2019, Plaintiffs filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3. Following oral argument and efforts to settle the matter, the Court of Appeals for the Second Circuit decided *Ventura de Paulino v. New York City Department of Education*, 959 F.3d 519, 525 (2d Cir. 2020), which confirmed the interpretation of the IDEA set forth in this Court's October 2019 Opinion. On May 28, 2020, the Court ordered Plaintiffs to file a letter that advised the Court whether they intended to withdraw their motion for reconsideration in light of that decision. On July 13, 2020, Plaintiffs submitted a

letter arguing that *Ventura de Paulino* should not control this action because the facts of this case were materially distinguishable. The Court disagrees.

## STANDARD OF REVIEW

Motions for reconsideration filed prior to final judgment are governed by Local Civil Rule 6.3, which provides that the moving party shall set forth "the matters or controlling decisions which counsel believes the Court has overlooked."[3] *SEC v. Collector's Coffee Inc.*, 464 F. Supp. 3d 665, 667 (S.D.N.Y. 2020). "The Second Circuit has held that '[a] motion for reconsideration should be granted only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Id.* (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)). Reconsideration of a previous order is an extraordinary remedy, subject to a strict standard and sparingly employed. *See, e.g, Ortega v. Mutt*, No. 14-CV-09703 (JGK), 2017 WL 1968296, at *1 (S.D.N.Y. May 11, 2017).

## DISCUSSION

Plaintiff principally argues that the Court's decision improperly deprives L.S. of her entitlement to pendency funding because "she cannot obtain [] funding for an education and related services at a school she did not attend," and that the Court erred in applying the reasoning of *Neske v. New York City Department of Education*, No. 19-CV-2933 (VEC), 2019 WL 3531959, (S.D.N.Y. Aug. 2, 2019) because the facts in that case are materially distinguishable from those here.

The Court is not persuaded. As stated in the October 2019 Opinion, when parents unilaterally move their child from a pendency placement to a different placement of their choice,

---

[3] Because final judgment has not been entered in this case, Fed. R. Civ. P. 59(e), which governs a "motion to alter or amend a judgment," is inapplicable here.

they are not entitled to pendency funding for the new placement. This legal conclusion is now supported by intervening Second Circuit precedent, rendering irrrelevant any prior reliance on *Neske*.

Pursuant to 20 U.S.C. § 1415(j), L.S. was entitled to remain in "[her] then-current educational placement" pending the resolution of her due process complaint against the DOE concerning the 2018–2019 school year. Generally, the "then-current educational placement" is "whatever educational placement was last agreed upon for the child." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 171 (2d Cir. 2014). To determine the "then-current educational placement" courts typically look to: "(1) 'the placement described in the child's most recently implemented IEP'; (2) 'the operative placement actually functioning at the time when the stay put provision of the IDEA was invoked'; or (3) 'the placement at the time of the previously implemented IEP.'" *E. Lyme Bd. of Educ.*, 790 F.3d at 452 (quoting *Mackey*, 386 F.3d at 163).

Each of these definitions turns on the meaning of "placement" in § 1415(j). The Second Circuit has defined the phrase "educational placement" to refer to "the classes, individualized attention and additional services a child will receive—rather than the 'bricks and mortar' of the specific school." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 419 (2d Cir. 2009). In the specific context of the stay-put provision, the Circuit has interpreted that phrase to refer to "the same general level and type of services" that a child receives. *T.M. ex. Rel. A.M.*, 752 F.3d at 171.

At the time this Court issued its October 2019 Opinion, judges in this District were split as to whether these precedents interpreting 20 U.S.C. § 1415(j) permitted families to receive "stay-put" funding when they unilaterally moved their child from one private school to another, so long as the new school offered a program "substantially similar" to the prior one. *Compare, e.g., Neske*, 2019 WL 3531959 (finding that parents have no right to pendency funding for new placement

when "the original placement remains an available option") *with Melendez v. N.Y.C. Dep't of Educ.*, No. 19-CV-2928 (ER), 2019 WL 5212233, at *9 (S.D.N.Y. Oct. 16, 2019) (directing IHO to issue revised pendency order that addressed whether services at new placement were substantially similar to those received at agreed-upon placement). In denying Plaintiff's motion for a preliminary injunction, the Court held that such an interpretation would effectively undermine the school district's ability to choose the appropriate schools for the children in its district, as the IDEA authorizes it to do.

The Second Circuit has since held the stay-put provision of the IDEA does not entitle parents to pendency funding for a new school in which the child was unilaterally enrolled, regardless of whether that new school is substantially similar to the program that was last agreed upon by the parents and the school district. *See Ventura de Paulino,* 959 F.3d at 525. Parents who "unilaterally change their child's placement during the pendency of review proceedings . . . . do so . . . at their own financial risk." *Id.* at 526 (internal quotation marks omitted). The Court of Appeals expressly stated that "it is the City, not the Parents, that is authorized to decide how (and where) the Students' pendency services are to be provided." *Id.* at 533. Reasoning that the stay-put provision was intended as a procedural safeguard "preventing the school district from unilaterally modifying a student's educational program during the pendency of an IEP dispute" without consent of the parents, the *Ventura de Paulino* court concluded that that provision "does not eliminate . . . the school district's preexisting and independent authority to determine *how* to provide the most-recently-agreed-upon educational program." *Id.* at 534 (emphasis in original). "To hold otherwise would turn the stay-put provision on its head," by not only eliminating the school district's authority to determine pendency services but also granting parents an effective

veto over school choice, "a power the IDEA clearly does not grant them." *Id.* (internal quotation marks omitted).

Plaintiffs argue that the instant matter is distinguishable from *Ventura de Paulino* because the DOE allegedly failed to offer a pendency placement that would maintain L.S.'s educational status quo. Dkt. 61 at 3-4. According to Plaintiffs, because DOE's proposed pendency placement at a public school would not guarantee a level of education commensurate with L.S.'s "then-current educational placement" at iHope, they fall under the exception recognized by *Ventura de Paulino* for circumstances "where the school providing the child's pendency services is no longer available *and* the school district either refuses or fails to provide pendency services to the child." 959 F.3d at 534 n.65 (emphasis in original). That exception does not apply here, however, because iHope, "the school providing [L.S.'s] pendency" services, remained available to Plaintiffs. Indeed, the Settlement Agreement entitled L.S. to remain at iHope for the 2018-2019 school year. Accordingly, Plaintiffs' decision to unilaterally transfer L.S. from iHope to iBrain constituted an effective rejection of her pendency placement and disentitled them to funding for the new placement. In sum, the holding of *Ventura de Paulino* applies squarely to the instant case, and confirms the legal conclusions that supported the October 2019 Opinion.

Because Plaintiffs have pointed to no evidence or controlling precedent that the Court overlooked and which would alter its decision, they are not entitled to relief under Local Civil Rule 6.3.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for reconsideration is DENIED. The Clerk of Court is directed to terminate the motion pending at Docket number 39. The parties shall file a letter updating the Court on the status of this case by no later than February 8, 2021.

SO ORDERED.

Dated:  January 8, 2021
        New York, New York

_____
Ronnie Abrams
United States District Judge